UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BARBARA J.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03383-MJD-TWP |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Barbara J. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on June 29, 2015, alleging an onset date of June 14, 2013. [Filing No. 8-2 at 16.] Her application was initially denied on September 1, 2015, [Filing No. 8-4 at 7], and upon reconsideration on October 20, 2015, [Filing No. 8-4 at 17]. Administrative Law Judge Victoria A. Ferrer (the "ALJ") conducted a hearing on December 1, 2017. [Filing No. 8-2 at 35-83.] The ALJ issued a decision on March 14, 2018, [Filing No. 8-2 at 13], concluding that Barbara J. was not entitled to receive DIB, [Filing No. 8-2 at 28.] The Appeals Council denied review on September 13, 2018. [Filing No. 8-2 at 2.] On November 2, 2018, Barbara J. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I. **STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II. BACKGROUND

Barbara J. was 53 years of age at the time she alleged her disability began. [Filing No. 8-5 at 2.] She has completed one year of college with specialized training as a medical assistant

and previously worked as a bus driver, cook, gate worker, and meat wrapper. [Filing No. 8-6 at 22.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Barbara J. was not disabled. Specifically, the ALJ found as follows:

- Barbara J. last met the insured status requirements of the Social Security Act on June 30, 2014 (the date last insured or "DLI").[3] [Filing No. 8-2 at 19.]

- At Step One, she had not engaged in substantial gainful activity[4] since June 14, 2013, the alleged onset date. [Filing No. 8-2 at 19.]

- At Step Two, Barbara J. "had the following severe impairments: Asthma/COPD; Right Knee Degenerative Joint Disease; Right Rotator Cuff Tear." [Filing No. 8-2 at 19 (citation omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 21.]

- After Step Three but before Step Four, Barbara J. had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) except: [t]he claimant could frequently stoop; [t]he claimant should avoid concentrated exposure to pulmonary irritants." [Filing No. 8-2 at 21.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Barbara J.'s RFC, she was capable of performing her past relevant work as a gate guard, short order cook, and hand packager. [Filing No. 8-2 at 27-28.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Barbara J. must prove the onset of disability on or before her DLI to be eligible for DIB benefits. *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131. The ALJ's subsequent findings in the sequential evaluation process were limited to the relevant period at issue for Barbara J.'s DIB claim, beginning with the alleged disability onset date, June 14, 2013, through the DLI. [*See, e.g.,* Filing No. 8-2 at 19 (citation omitted) ("The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 14, 2013 through her date last insured of June 30, 2014.").]

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

## III. DISCUSSION

Barbara J. asserts that the ALJ erred in the following respects: (1) the ALJ's RFC finding was not supported by substantial evidence and included a unilateral rejection of the disabling opinions of both state agency consultants and Barbara J.'s treating physician; and (2) the ALJ's subjective symptom evaluation was patently wrong. The Court will address the issues as necessary to resolve the appeal.

### A. Supplemental Security Income

The Court begins by addressing a procedural issue concerning Barbara J.'s application for supplemental security income ("SSI"). The administrative record before the Court indicates that at the time of her DIB application on June 29, 2015, Barbara J. also filed an application for SSI. [Filing No. 8-5 at 11.] The SSI application was described as "abbreviated," [Filing No. 8-5 at 10], and Barbara J. reported significant spousal income that was ongoing at the time of the application, [Filing No. 8-5 at 17]. The SSA's initial and reconsideration notices referred only to Barbara J.'s claim for DIB. [Filing No. 8-4 at 7; Filing No. 8-4 at 17.] Likewise, the SSA's internal determination transmittal forms referred only to her claim for DIB. [Filing No. 8-3 at 10; Filing No. 8-3 at 20.] Furthermore, the disability determination explanation forms only reference a claim for DIB. [Filing No. 8-3 at 2; Filing No. 8-3 at 11.] However, the corresponding state agency consultant reviews contained in those explanations ambiguously reflected a "current evaluation" of Barbara J.'s RFC with the initial determination, [Filing No. 8-3 at 5], despite the fact Barbara J.'s DLI had expired more than a year before the determination, [*see* Filing No. 8-3 at 7 (initial review dated August 12, 2015); *see also* Filing No. 8-5 at 43 (certified earnings record indicating a "06/14" DLI, referring to June 30, 2014)], and then an RFC assessment limited to the period ending with Barbara J.'s DLI along with the

5

reconsideration determination, [Filing No. 8-3 at 15]. On November 5, 2015, Barbara J. appealed the reconsideration determination by requesting a hearing. [Filing No. 8-2 at 88.] The hearing notice sent to Barbara J. explained that the hearing concerned a June 29, 2015, application for DIB, as well as a November 5, 2015, application for SSI. [Filing No. 8-4 at 68.]

During the hearing, the ALJ stated that the SSI application "wasn't filed until April 27, 2017." [Filing No. 8-2 at 36.] She explained that because there was no overlapping period covering the SSI application and the DIB claim—with an expired DLI on June 30, 2014—and there had not been an initial determination by the SSA with the SSI claim, she was going to "return the SSI application" and the hearing would only concern the DIB application. [Filing No. 8-2 at 35-37; *see* 20 C.F.R. § 416.335 (SSI is not compensable before the application date); *see also supra* note 3 (Barbara J.'s DLI is June 30, 2014).] Likewise, the ALJ's written decision addressed the SSI issue and reiterated what she had explained during the hearing, that the separate claims did not share a common issue. [Filing No. 8-2 at 16.] Accordingly, the ALJ explained that the SSI claim was "being remanded to the state agency for an initial determination, as was explained to the claimant and her representative during the hearing." [Filing No. 8-2 at 16.]

Barbara J. asserts along with her judicial review appeal that "such a remand never happened and the Title XVI application [for SSI] was sent along with the ALJ's unfavorable decision to the Appeals Council for Review." [Filing No. 14 at 19.] Barbara J. attached a screenshot of her attorney's firm's case management system indicating that on April 17, 2018, a staff member for her attorney's firm spoke with an employee of the SSA and was informed that no claim was currently being reviewed by the disability determination service for an initial determination and both claims were currently with the Appeals Council. [*See* Filing No. 14-1.]

6

Barbara J. contends that "[b]ecause the Appeals Council elected not to review the disposition, the ALJ's unfavorable decision should serve as the final disposition on both Plaintiff's Title II [for DIB] and Title XVI claims." [Filing No. 14 at 19.] Based on her conclusion that the ALJ's decision is the final determination on both claims and the ALJ resolved those claims unfavorably, Barbara J. contends that the ALJ erred by limiting her review to the evidence that reflects Barbara J.'s functioning prior to her DLI. [*See* Filing No. 14 at 19.]

The Commissioner's response offers very little about this procedural issue, stating only that "Plaintiff's arguments that her DLI is irrelevant to her SSI claim is correct, but she ignores that the ALJ dismissed that claim at the administrative hearing, and she agreed to proceed on the DIB claim only." [Filing No. 19 at 17 (citation omitted).] The Commissioner does not provide any evidence from the SSA that clarifies the status of Barbara J.'s SSI claim.

The Court is limited to reviewing the "final decision" of the Commissioner. 42 U.S.C. § 405(g)-(h); *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir. 1986). If the Appeals Council denies review, it is the determination of the Commissioner that the ALJ's decision is the final decision of the agency. *See Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993). According to the Social Security Act, the Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court affirms the final decision of the SSA concerning Barbara J.'s SSI claim. To be clear, the Court does not agree with the Commissioner that Barbara J.'s SSI claim was "dismissed" at the hearing. The ALJ's decision sent the SSI claim back to the SSA for an initial determination. The Court agrees with the Barbara J. that the Appeals Council's notice that

7

review was not granted made the ALJ's decision the final decision of the Commissioner. However, the Court does not agree that the SSI claim was adjudicated unfavorably by either the ALJ or constructively by the Appeals Council's decision to deny review. It is unclear to the Court whether the Appeals Council considered the SSI issue on appeal at all. The Order of the Appeals Council denying review only listed claims for "Period of Disability" and "Disability Insurance Benefits." [[Filing No. 8-2 at 6](#).] Notably absent is any reference to a claim for SSI. However, whether the Appeals Council technically denied review of the SSI claim or simply did not consider that claim to have been appealed is a distinction without a difference. Put another way, whether the Appeals Council considered the procedural disposition of the SSI claim on appeal and found no reason to disturb it or whether the Appeals Council did not consider the claim to have been appealed at all, the Court finds the ALJ's decision to be the final decision of the Commissioner on the SSI claim.

The Court affirms the procedural disposition explained by the ALJ in the written decision. Despite the ambiguity as to when the SSI application was filed, the earliest possible filing date reflected in the record—and likely the date that should be used by the SSA—was June 29, 2015. That date is well after Barbara J.'s DLI expired for her DIB claim. As such, there is no common period between the two claims. Accordingly, if the SSA has not made an initial determination on Barbara J.'s SSI claim, the Court orders the SSA to do so pursuant to the ALJ's decision. If the SSA has made an initial determination on Barbara J.'s SSI claim, the Court lacks jurisdiction here to order any additional action by the agency. Subsequent proceedings after the initial determination should follow the SSA's governing authority, as is always the case.

Furthermore, the Court does not find that the procedural disposition of Barbara J.'s SSI claim had any bearing on the ALJ's adjudication of her separate DIB claim. Accordingly, the Court now turns to its review of the ALJ's decision concerning Barbara J.'s claim for DIB.

## B. RFC and Step Four Determination

The Court finds that substantial evidence supports the ALJ's Step Four determination. As noted above, the standard of review requires that the Court uphold the ALJ's decision if it is supported by substantial evidence. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Beardsley v. Colvin*, 758 F.3d 834, 836 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has explained "[t]o determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley*, 758 F.3d at 836-37 (citing *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000)). "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits,' the court must defer to the Commissioner's resolution of that conflict." *Beardsley*, 758 F.3d at 837 (quoting *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

To a significant extent, the ALJ relied on Barbara J.'s own testimony to determine that she retained the capability to perform her past relevant work prior to the expiration of her DLI. The ALJ explained that the evidence supported Barbara J.'s testimony that she began working at "Turkey Run" in July 2014—after her DLI—until she injured her shoulder in September 2014 and subsequently did not return to work. [Filing No. 8-2 at 19-20 ("Additionally, as discussed earlier in this decision, records indicate that the claimant did not in fact begin that job until July 2014").] The ALJ summarized Barbara J.'s statements concerning the limiting effects of her

9

shoulder, knee, back, and lung impairments, including her testimony that she "had difficulty performing various daily activities" since her alleged onset date. [Filing No. 8-2 at 22.] However, the ALJ explained:

> As discussed earlier in this decision, with respect to the period prior to her date last insured, I find the claimant's testimony regarding her alleged back impairment and related limitations unpersuasive, finding that this impairment was non-severe. Similarly, with regard to her knee impairment, shoulder impairment and asthma, the medical evidence of record, discussed below, provides only limited support for her allegations, and tends to suggest that her symptoms were not as severe, persistent or limiting as she has alleged during the period at issue.

[Filing No. 8-2 at 22.] After the ALJ summarized the medical evidence of record, [Filing No. 8-2 at 23-24], she returned to Barbara J.'s testimony, stating, "In addition to the foregoing, I note that the claimant herself testified she was able to lift at least thirty-five to forty-pounds while she was working at Turkey Run in 2014 up until she re-injured her right shoulder that year." [Filing No. 8-2 at 24.]

The ALJ gave "only slight weight" to the opinions of the state agency consultants, whose assessments conflicted with her RFC finding. [Filing No. 8-2 at 25.] The ALJ explained:

> Again, the claimant herself testified that she was able to lift at least thirty-five to forty pounds in 2014 up until she re-injured her right shoulder several months after her date last insured. In light of the foregoing, the state agency medical consultants' opinions seem overly-restrictive with respect to the period prior to her date last insured.

[Filing No. 8-2 at 26.]

The ALJ also discussed the various medical source statements provided by Barbara J.'s treating orthopedic specialist, Christopher Bales, M.D., noting that "Dr. Bales offered numerous opinions concerning the claimant's ability to work, rendered in connection with a workers' compensation claim filed by the claimant following her September 2014 shoulder injury." [Filing No. 8-2 at 26.] The ALJ also discussed a functional capacity evaluation completed by a

physical therapist, Joanne McDowell, in June 2015—at the request of Dr. Bales—to assess any residual limitations from the September 2014 shoulder injury. [Filing No. 8-2 at 27.] The ALJ noted that the examination occurred "nearly a year after the period at issue" and concluded the following:

> Additionally, like the opinions of Dr. Bales discussed above, this opinion seems overly restrictive with regard to the period at issue between the claimant's alleged disability onset date and date last insured. As discussed above, records show that the claimant experienced significant improvement following her right shoulder surgery on June 4, 2013, showing that the claimant reported having only "minimal" complaints regarding her right shoulder during a visit to Dr. Bales in November 2013, and showing that she was observed at that time to exhibit full range of motion in her right shoulder, with intact strength. Additionally, as discussed above, following that visit, the claimant's treatment records document no further complaints by her regarding her shoulder until she re-injured it several months after her date last insured. As noted, the claimant herself testified that she was able to lift at least thirty-five to forty pounds in 2014 up until she re-injured her right shoulder several months after her date last insured. In light of the foregoing, this opinion, like those offered by Dr. Bales above, seems grossly overly restrictive with respect to the period at issue prior to the claimant's date last insured. For these reasons, I have given little weight to Ms. McDowell's assessment.

[Filing No. 8-2 at 27.]

Barbara J.'s testimony about her capacity to work in July 2014 through her shoulder injury in September 2014 supported the ALJ's rationale for her Step Four determination that Barbara J. was not as limited prior to her DLI as she was after her she reinjured her shoulder. The ALJ asked Barbara J., "Okay. And before June 30, 2014, how much could you lift or how much were you lifting?" [Filing No. 8-2 at 56.] Barbara J. testified:

> Well, I know like the oil, when we changed the oil, those jugs of oil were like at least 35 pounds; you know, cases of pop, I could, you know, carry one case of pop. I would go through a lot of buckets of water, like three-gallon buckets of water to make tea and different things like that.

11

[Filing No. 8-2 at 56.] The ALJ, "Okay. And then after you -- when you injured your shoulder in September 2014, you could no longer do that?" [Filing No. 8-2 at 57.] Barbara J. responded, "Correct." [Filing No. 8-2 at 57.]

Barbara J.'s representative at the hearing revisited the issue after establishing that Barbara J. had only performed the work at Turkey Run for July, August, and most of September in 2014. [*See* Filing No. 8-2 at 57-58.] The following exchange occurred during the hearing:

> [Representative:] Okay. So a few months at that job, now the lifting you were doing, I mean, do you feel like you should have been doing that lifting? Was that within your capability at that time or do you think that the fact that you had that injury indicates that that was too much?
>
> [Barbara J.:] *No, I was able to do my job before that*. I was able to lift at least 35/40 pounds.
>
> [Representative:] Okay. Well, how about the time on your feet, were you struggling with that?
>
> [Barbara J.:] Yeah, with my back I was --
>
> [Representative:] Okay.
>
> [Barbara J.:] -- but I just -- I had to have a job and I just pushed through it.
>
> [Representative:] Okay. Well, I mean, it seems like, you know, that job may have been too much for you. I mean, did you feel like you were able to keep up with –
>
> ALJ: Now, oh, that please don't direct her. I mean, I understand that the rules of evidence don't strictly apply, but the premise besides that remains.
>
> [Representative:] Yeah, and your honor --
>
> ALJ: When you do something like that, when you do something like that it affects the case. So just --
>
> [Representative:] I understand
>
> ALJ: Oh, I --
>
> [Representative:] and I think what I'm getting at is, I mean, it -- and I think you -- your honor can tell what the issue here, she was lifting, you know, more than the

12

sedentary level after her date last insured at this job. So I could see how that would, you know, be a fact that would be important, but I think -- you know, this is what I'm getting at, is that she probably shouldn't have been doing that. She had -- you know, it caused a rotator cuff tear that put her out of -- oh, out of commission. So, I mean, that's all I was getting at and I might as well just

ALJ:_Okay, I and I know what you --

[Representative:] -- say that instead of --

ALJ: -- were getting at, it's the way you were getting at it. I mean, I understand and -- but I also look at the absolute thing and the FCE evaluation and it does say -- I mean, you know, for what it's worth it says light exertional level, *but I think the issue was -- and the claimant has been very clear, she was able to do her job before the injury.* I think the problem was the rotator cuff injury. Well, you know, you can go on and ask her what you want to ask her, just be careful of how you're asking.

[Filing No. 8-2 at 58-60 (emphasis added).] Barbara J.'s testimony provided a reasonable basis for the ALJ to conclude that she had the capacity to do her job at Turkey Run as a short order cook prior to her DLI and the reinjury of her right shoulder several months after her DLI.

The Seventh Circuit has held that an ALJ may rely on the testimony of the claimant describing her capabilities to establish the claimant's RFC and the claimant's ability to work generally and to discredit the claimant's other inconsistent statements alleging greater limitations. *See Kapusta v. Sullivan*, 900 F.2d 94, 96 (7th Cir. 1989) ("Thus, without even referring to the medical reports, Kapusta's own testimony provides substantial evidence to support the ALJ's conclusion."). The Seventh Circuit explained further that "[a]lthough the treating physician's views are to be given some deference, *see Garrison v. Heckler*, 765 F.2d 710 (7th Cir. 1985), the final decision on whether a claimant is disabled or not is a legal one rather than a medical one, and it is for the ALJ to make that decision." *Kapusta*, 900 F.2d at 97 (citing 20 C.F.R. §§ 404.1527 and 416.927). "The ALJ's reasonable resolution of conflicts in the

evidence is not subject to review, as we do not reweigh the evidence." *Kapusta*, 900 F.2d at 97 (citing *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989)).

Furthermore, the ALJ did not rely exclusively on Barbara J.'s testimony. As quoted above, the ALJ considered the medical evidence as well, which showed that Barbara J.'s symptoms and objective signs improved—prior to her DLI—following a previous right rotator cuff injury, and that she did not seek treatment for her shoulder again until after the shoulder was reinjured in September 2014. For example, the ALJ cited treatment records from Dr. Bales which noted the following on November 25, 2013, more than seven months prior to Barbara J.'s DLI:

> Barb is here for follow[-]up of a right shoulder arthroscopy with rotator cuff repair and subacromial decompression on 06/14/2013. She is now 5 months out. Overall is doing well, really minimal complaints at this time. With the colder weather she has noticed a little aching soreness.
>
> On exam of the right shoulder, she has full range of motion. Rotator cuff strength is 5/5 without pain. Neurovascular exam is intact distally.
>
> PLAN: I encouraged Barb to continue with her home exercise program. She is going to see me back as needed in the future.

[Filing No. 8-7 at 311.]

Barbara J. raises the argument on appeal that her hearing representative alluded to during the hearing—that the fact she was injured while working demonstrates that she was not capable of performing the work. [Filing No. 14 at 18-19.] Relatedly, Barbara J. contends that the ALJ was not permitted to: (1) make a medical determination—without the assistance of a supportive medical opinion and contrary to all the opinions of record—as to Barbara J.'s capacity for work in the interim between the first rotator cuff injury and Barbara J.'s DLI, (2) discount the disabling assessment of the reviewing agency consultant on these facts; and (3) discount the post-DLI disabling opinion of Dr. Bales. [Filing No. 14 at 18-19; Filing No. 14 at 22.]

14

There is some support for Barbara J.'s contention. As noted above, the reviewing agency consultant's opinion at the reconsideration level was ostensibly an assessment of Barbara J.'s functional capacity at the time her DLI expired. The assessment was for a range of light work that included limitations of occasional reaching and pushing and pulling in the right upper extremity. [Filing No. 8-3 at 15-17.] The consultant supported his assessment, in part, by referencing that Barbara J. had a history of "recurrent rotator cuff injuries [status post] repair with some pain with repetitive work but good [range of motion] except internal rotation." [Filing No. 8-3 at 16.] The VE testified that an individual with those limitations would not be able to perform Barbara J.'s past relevant work. [*See* Filing No. 8-2 at 68-69.] Additionally, the Seventh Circuit has explained that not even a treating physician is entitled to "complete deference," but "rejecting or discounting the opinion of the agency's own **examining** physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839 (emphasis added) (here, the ALJ discounted the reviewing opinions of the agency consultants, rather than a consultative examiner's opinion).

However, an ALJ is not required to adopt a medical opinion as the basis for the RFC. At the administrative law judge hearing level, the ALJ "is responsible for assessing your residual functional capacity." 20 C.F.R. § 404.1546(c). The SSA reserves certain administrative findings that are dispositive of a case, including the RFC, specifying they are not medical issues. Social Security Ruling ("SSR") 96-5p (S.S.A. July 2, 1996), 1996 WL 374183, at *2. The ruling explains:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: [a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC

15

> assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

*Id.* at *4. The Seventh Circuit has provided guidance that "an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz v. Chater,* 55 F.3d 300, 306 n.2 (7th Cir. 1995)). If the record does not contain a medical opinion that is supported by the evidence, the ALJ does not have to choose between poor options, but rather must formulate an appropriate RFC based on all the evidence.

Moreover, the ALJ cited evidence of record that reasonably conflicts with Barbara J.'s contention. [*See* Filing No. 8-2 at 24 (ALJ citing "Exhibit 3F/17").] On November 10, 2014, Dr. Bales's treatment records indicated the following:

> Barb is a 54-year-old female here for evaluation of a right shoulder injury that occurred on 09/23/2014. I had done a prior rotator cuff repair in June 2013. I had released her approximately 1 year ago, and she was doing fine. She had been doing well until this injury at work. She was helping lift up a large refrigeration unit and felt a pain in her shoulder. Those symptoms have progressively worsened over the past a [sic] 2 months. She is now having a lot of sharp pain, sometimes just when sitting. She is getting pain in the scapula and radiating along the trapezius to the neck. Symptoms feel similar to her prior rotator cuff tear.

[Filing No. 8-7 at 308.] Despite the fact the injury occurred at work, the ALJ could reasonably conclude that the description of the injury contained in the medical records did not support that Barbara J.'s post-DLI rotator cuff tear was a result of her performing her usual job duties as a short order cook, either as that job was actually performed or as it is generally performed in the economy. The description of the injury and Barbara J.'s response to treatment after the initial rotator cuff tear also did not support Barbara J.'s contention that the reviewing consultant's

16

limitation to occasional reaching and pushing and pulling was a necessary precaution to avoid the very type of injury that occurred. The ALJ could reasonably conclude based on Barbara J.'s testimony and the medical evidence of record that had she not reinjured her shoulder helping lift a large refrigeration unit, she could have continued to perform the job she unequivocally testified she was capable of just shortly after her DLI expired. As the Seventh Circuit has explained, "the resolution of competing arguments based on the record is for the [ALJ], not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). Accordingly, the Court finds that substantial evidence supports the ALJ's Step Four determination.

Similarly, the Court finds Barbara J.'s remaining arguments unpersuasive according to the standard of review. However, the Court will address one more of them in the interest of being thorough.

Barbara J. takes issue with the ALJ's treatment of her lumbar spine impairment, including that the ALJ reasoned that the state agency consultants' assessments were not supported, in part, because they had considered post-DLI evidence in the form of diagnostic imaging taken just after Barbara J.'s DLI. [Filing No. 14 at 17-18.] The Court finds some merit in Barbara J.'s argument. The Court does not necessarily conclude that Barbara J.'s lumbar spine impairment was not severe at the time of her DLI or that the ALJ's precise RFC assessment that Barbara J. was capable of performing a range of medium work inclusive of lifting up to fifty pounds was supported. However, those findings are not material to the outcome of the claim on these facts. And to the extent those particular findings are not supported, any error is harmless.

The ALJ explained that she had found Barbara J. capable of performing her past relevant work as a gate guard, short order cook, and hand packager. At Step Four, a claimant is not

disabled if she retains the RFC to perform either: 1) the "actual functional demands and job duties of a particular past relevant job" or 2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSA 82-61 (S.S.A. 1982), 1982 WL 31387, at *1. "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62 (S.S.A. 1982), 1982 WL 31386, at *3. As detailed above, Barbara J. testified she was capable of performing her job at Turkey Run as a short order cook—the way she actually performed it—including the lifting and carrying requirements. The VE testified that the work was typically performed at the light exertional level and actually "performed up to medium according to the file . . . ." [Filing No. 8-2 at 66.] Additionally, Barbara J. testified regarding her need to take unscheduled breaks because of issues being on her feet as a result of her back impairment that her employer "really wouldn't say nothing [sic] because I wouldn't take them like during the lunch rush or nothing, you know. I would wait until things calmed down, you know, and they really wouldn't have a problem, you know." [Filing No. 8-2 at 62.] She also testified the breaks were not "an everyday thing" and lasted about "five minutes." [Filing No. 8-2 at 61.] Barbara J.'s hearing representative never developed with VE testimony how these breaks would affect an individual's ability to perform work as a short order cook in the typical economy. Regardless, whatever back limitations existed prior to Barbara J.'s DLI, she testified that she was able to perform her job as short order cook the way it was actually performed. Accordingly, Barbara J.'s testimony provided substantial support for the ALJ's Step Four determination, particularly as it applies to Barbara J.'s ability to perform her past relevant work as a short order cook.

## IV. CONCLUSION

The Court can find no legal basis presented by Barbara J. to reverse the ALJ's decision that she was not disabled during the relevant time period pertaining to her claim for DIB. Her SSI claim covering a separate period at issue should be considered by the SSA as specified by the ALJ in the written decision, including the need for an initial determination if one has not already been issued. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

SO ORDERED.

Dated: 14 AUG 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.